IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

**EOD**

10/13/2017

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **MICHAEL RICHARD HUFFMAN** | § | Case No. 16-10344 |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| WARREN CLAYBAR, RIAN GLASSCOCK and HALLEY MOOR, | § | |
| | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | Adversary No. 16-1009 |
| | § | |
| MICHAEL RICHARD HUFFMAN | § | |
| | § | |
| Defendant | § | |

## MEMORANDUM OF DECISION GRANTING
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

ON THIS DATE the Court considered the Motion for Summary Judgment filed by

the Plaintiffs, Warren Claybar, Rian Glasscock, and Halley Moor (the "Plaintiffs"), in the

above-referenced adversary proceeding.  The Plaintiffs' adversary complaint seeks a

determination that the debt owed to it by the Defendant-Debtor, Michael Richard

Huffman (the "Defendant"), is excepted from the scope of his Chapter 7 discharge

pursuant to 11 U.S.C. § 523(a)(2)(A), which excepts from discharge a debt obtained by

"false pretenses, a false representation, or actual fraud."  The Plaintiffs argue that the

determinations issued by the United States District Court for the Southern District of

Alabama that resulted in the entry of a default judgment against the Defendant establish

the elements necessary to render that judgment debt nondischargeable as a matter of law

under § 523(a)(2)(A).  Upon due consideration of the pleadings, the proper summary judgment evidence submitted by the parties, and the relevant legal authorities, the Court finds that the Plaintiffs have demonstrated that there is no genuine issue as to any material fact and that they are entitled to a judgment as a matter of law that the Defendant's debt arising from the federal court judgment is nondischargeable under § 523(a)(2)(A).[1]

## Factual and Procedural Background[2]

Following the Deepwater Horizon oil spill in May of 2010, the National Response Corporation ("NRC") contracted to provide certain cleanup efforts.  When the NRC and its direct subcontractor, Northstar Marine, Inc., needed additional assistance to fulfill the requirements of the contract, Northstar contacted one of the Plaintiffs, Rian Glasscock, about his ability to fulfill certain of the contractual obligations and he, in turn, contacted the two other Plaintiffs, Warren Claybar and Halley Moor, along with the Defendant, Michael Huffman, and his company, Huffman Construction, Inc.[3]  Proceeding as sub-subcontractors to perform some of the duties required under the NRC contract, the

---

[1]  This Court has authority to enter a final judgment in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(I) and (O) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

[2]  The facts presented are those which stand uncontested by and among the parties and are presented only as a general factual background to the legal claims asserted in the case.  This section is not intended to resolve any disputed or contested facts.

[3]  Throughout the relevant portion of the federal court proceedings in Alabama, including the proceedings resulting in the entry of the default judgment against Michael Huffman, the prosecution of claims against Huffman Construction, Inc. were stayed after that corporation filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Indiana.

Plaintiffs and the Defendant entered into a verbal agreement under which the Defendant and his company would provide insurance and administrative services and the three Plaintiffs would furnish the actual equipment and labor necessary to fulfill the contract.[4] Under that verbal agreement, the Defendant and his company agreed to pay each of the Plaintiffs 25% of the net profits arising from the performance of the contractual duties. In other words, they would split the net profits into fourths. As the "administrative partner," the Defendant received the contractual payments from Northstar totaling approximately $4 million. The Defendant never paid any of the sums to the Plaintiffs.[5]

As a result of the nonpayment of funds, in May 2014, the Plaintiffs sued the Defendant and the Defendant's company, Huffman Construction, Inc., in the United States District Court for the Southern District of Alabama, Southern Division, the Hon. William H. Steele, presiding (the "District Court"), under case no. 14-0205-WS-C (the "Federal Litigation").[6] The Plaintiffs' complaint in the Federal Litigation sought to pierce the corporate veil to impose personal liability upon the Defendant for alleged actions taken by and/or through his company to commit fraud, breach of contract, conversion, and negligent and/or reckless misrepresentation with regard to the oral contract, thereby allegedly subjecting himself and his company to the imposition of actual and/or statutory

---

[4] Plaintiffs' Ex. 6 at 2.

[5] *Id.*

[6] The original case number of the lawsuit was 14-00205-KD-M, but was changed when the case was subsequently reassigned to the Hon. Judge Steele.

damages, together with liability for costs and attorneys' fees.

After the Federal Litigation had progressed for approximately one year through the discovery and dispositive motion phases, the counsel for the Defendant filed a  motion to withdraw as attorney of record for the Defendant on the grounds that the Defendant had ceased communicating with him, had failed to pay invoices due both to his firm and to third-party vendors, and had otherwise failed to comply with other terms of the counsel's engagement agreement.[7]  This withdrawal motion occurred as the District Court was preparing to entertain and enter final pre-trial orders and directives in the Federal Litigation — issues which would obviously be impacted by the withdrawal of the Defendant's counsel.

On October 2, 2015, in light of the pendency of the counsel withdrawal request, the District Court ordered that the Defendant personally appear at the final pretrial conference which was scheduled to be conducted on October 21, 2015.  On October 14, 2015, the Court again ordered the Defendant to make a personal appearance at the October 21 pretrial conference, at which time the Court would also consider the attorney withdrawal motion.  One day prior to the scheduled pretrial conference, on October 20, 2015, the Defendant unsuccessfully sought to speak to the presiding judge by telephone. The District Court directed the Defendant to make any information requests to the Clerk's Office.  The next day, on the morning of the pretrial conference, the Defendant sent an

---

[7] Plaintiffs' Ex. 3 at 1.

email to his counsel of record stating, in part, "Please excuse my absence from the pre

trail [sic] today."[8]  Then, despite the repeated directives of the District Court, the

Defendant failed to appear for the final pretrial conference on October 21.

On October 23, 2015, the District Court granted the motion to withdraw by the

Defendant's counsel and entered a sanction of default against the Defendant individually

for his willful disobedience of multiple court orders compelling his attendance at the final

pretrial conference.[9]  In its October 23 order, the District Court recited the various times

that the Defendant had been ordered to appear at the pretrial conference[10] and it

specifically found that, despite the Defendant's actual knowledge of the final pretrial

conference and the Court's unambiguous directives mandating his personal appearance at

that hearing, the Defendant had failed to appear.[11]  Among other impacts, the District

Court found that this failure "prevented any meaningful discussion from occurring at the

conference" causing "judicial and litigant resources to be squandered," "derailed a trial

setting that was fixed back in September 2014," and "reduced the Final Pretrial

Conference to a colossal waste of time for all concerned."[12] The District Court further

found that the Defendant's absence was inexcusable, as nothing submitted by the

---

[8]  Plaintiffs' Ex. 3 at 2.

[9]  *Id.*

[10]  *Id*. at 3.

[11]  *Id*.

[12]  *Id*.

Defendant suggesting the existence of any emergency or exigent circumstances,[13] with the Court concluding that the Defendant's "disobedience was willful and in bad faith,"[14] and that the Defendant had "knowingly and willfully refused to comply with multiple court orders without good cause, all to the detriment of the orderly and efficient administration of justice in this litigation."[15]  The District Court finally concluded that "[u]nder these circumstances, no lesser sanctions will suffice, and default is the only appropriate sanction under both Rule 16(f)(1) and the inherent powers of this Court."[16]

Among the admitted facts germane to this proceeding that arose from the Defendant's post-answer default were the following:

(1)  Defendants[17] agreed to share the profits of the income derived from the NRC contract;[18]

(2)  Defendants intended that the Plaintiffs rely on the aforesaid promise to induce Plaintiffs to deliver the contract and procure labor and equipment for use in the NRC contract;[19]

(3)  When they entered into that agreement, Defendants had no intention of honoring their agreement to pay Plaintiffs their share of the profits;[20]

---

[13] *Id*. at 3-4.

[14] *Id*. at 5, n 2.

[15] *Id*.

[16]  *Id*.

[17]  The admitted facts reference both Michael Huffman and his company as "Defendants," although the default was taken solely against Huffman individually due to the company's status as a bankruptcy debtor under Chapter 11.  *See supra* note 3.

[18]  Plaintiffs' Ex. 5 at 6, ¶ 37.

[19]  *Id*. at ¶ 38.

[20]  *Id*. at ¶ 39.

(4)  Defendants made false, misleading, deliberate and material representations to Plaintiffs concerning the sharing of profits in order to procure the contract and the necessary resources to carry out the NRC contract;[21]

(5)  Defendants, in making these material representations, knew that Plaintiffs would rely and act upon the same;[22]

(6)  Plaintiffs were otherwise ignorant of the falsities of the representations at issue;[23] and

(7)  Plaintiffs acted reasonably in their reliance on these representations, and suffered consequent and proximate injury as a result thereof.[24]

Notwithstanding the default, the District Court directed that it would enter a default judgment only after an independent assessment of damages to be tendered by the Plaintiffs through written submission.[25]  The Court required such submission by the Plaintiffs by November 12, 2015, with any response by the Defendant to be filed by November 25, 2015.[26]  Following the Court's directive, the Plaintiffs tendered various items of evidence in support of their requests for statutory damages and for an assessment of attorneys' fees and costs.[27]  The Defendant failed to submit any response to the

---

[21]  *Id*. at ¶ 40.

[22]  *Id*. at ¶ 41.

[23]  *Id*.

[24]  *Id*.

[25]  *Id*. at 4.

[26]  *Id*. at 5-6.

[27]  Plaintiffs' Ex. 4.

Plaintiffs' submission of evidence by his November 25 deadline.[28]

Thus, upon consideration of the admitted facts and the evidence tendered by the Plaintiffs regarding the assessment of damages, the District Court entered a final judgment on December 7, 2015 that rendered the Defendant, Michael Huffman, liable to each Plaintiff in the sum of $605,483.95 (the "Federal Court Judgment").[29]  In support of the judgment, the Court again referenced particular admitted facts arising from the Defendant's default which included that:

> (1)  following the Deepwater Horizon oil spill in May 2010, an oil-spill response entity called National Response Corporation ("NRC") was tasked with managing cleanup efforts;
>
> (2)  in mid-June 2010, NRC requested additional resources from one of its contractors, Northstar Marine, Inc., which lacked the administrative capacity to accommodate the request;
>
> (3) Northstar Marine offered the direct NRC contract to plaintiff Rian Glasscock if he could marshal the necessary resources;
>
> (4)  Glasscock, in turn, partnered with plaintiffs Warren Claybar and Halley Moor, as well as defendant Huffman Construction, Inc. to utilize their respective strengths, resources and expertise to perform the NRC direct contract;
>
> (5)  in exchange for plaintiffs providing resources and services in fulfillment of the NRC direct contract, defendants, Michael R. Huffman and Huffman Construction, Inc., verbally agreed to a profit-sharing arrangement under which defendants would pay each of Glasscock, Claybar and Moor 25% of the net profits from the NRC direct contract;
>
> (6)  notwithstanding their promise and the millions of dollars in profits they

---

[28]  Plaintiffs' Ex. 2 at 1.

[29]  Plaintiffs' Ex. 1.

received for the NRC direct contract, Defendants never paid Glasscock, Claybar and Moor any portion of their agreed-upon shares of such net profits;

(7) Huffman and Huffman Construction knowingly deceived plaintiffs into providing assistance for the NRC contract; and

(8) Defendants, Huffman and Huffman Construction, never intended to make good on their promise to share profits equally with each of Glasscock, Claybar and Moor.[30]

No appeal of the Federal Court Judgment was prosecuted.

Seven months later, on July 25, 2016, the Defendant filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court. The Plaintiffs filed their adversary complaint against the Defendant on November 4, 2016, to determine the nondischargeability of the debt memorialized by the Federal Court Judgment. The Plaintiffs subsequently filed the present motion for summary judgment, seeking a determination that the debt arising from the entry of the Federal Court Judgment should be declared nondischargeable as a matter of law under § 523(a)(2)(A) as a debt obtained by "false pretenses, a false representation, or actual fraud." Relying on principles of collateral estoppel, the Plaintiffs allege that the factual issues underlying its cause of action for nondischargeability were actually litigated in the federal district court in Alabama and that, in light of the entry of the Federal Court Judgment, this Court is precluded from deciding those issues again. The Defendant filed a response in opposition to the Plaintiffs' Motion.[31]

---

[30] Plaintiffs' Ex. 2 at 1-2.

[31] Dkt. #12.

# Discussion

*Summary Judgment Standard*

The Plaintiffs bring their Motion for Summary Judgment in this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056.  That rule incorporates Federal Rule of Civil Procedure 56, which provides that summary judgment shall be rendered "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).[32] "The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses."  *Chishty v. Texas Dept. of Aging and Disability Services,* 562 F. Supp. 2d 790, 800 (E.D. Tex. 2006).

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  As a movant, a party asserting that a fact cannot be genuinely disputed must support that assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

---

[32]  Pursuant to the scheduling order issued in this adversary proceeding on March 7, 2017, motions for summary judgment are required to comply in format and content with Local District Court Rule CV-56 and such motions are decided under the procedures stated therein.

FED. R. CIV. P. 56(c).

The manner in which the required summary judgment showing can be made

depends upon which party will bear the burden of persuasion at trial.  If, as in this

instance, the burden of persuasion rests on the moving party, "that party must support its

motion with credible evidence – using any of the materials specified in Rule 56(c)– that

would entitle it to a directed verdict if not contraverted at trial."  *Celotex*, 477 U.S. at 331.

Upon a *prima facie* showing by the movant of entitlement to judgment as a matter of law,

the non-movant may not rest upon the mere allegations or denials in its pleadings, but

rather must demonstrate in specific responsive pleadings the existence of specific facts

constituting a genuine issue of material fact for which a trial is necessary.  *Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 256-57 (1986); *Bayle v. Allstate Ins. Co.*, 615 F.3d

350, 355 (5th Cir. 2010).  "A fact is material only if its resolution would affect the

outcome of the action . . . ." *Wiley v. State Farm Fire & Cas. Co.,* 585 F.3d 206, 210 (5th

Cir. 2009); *accord Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).  If the

nonmoving party cannot muster sufficient evidence to demonstrate a genuine issue of

material fact, a trial would be useless.  The substantive law will identify which facts are

material.

The summary judgment record is viewed in the light most favorable to the non-

moving party,  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587

(1986), "but only where there is an actual controversy, that is, when <u>both</u> parties have

submitted evidence of contradictory facts."  *Boudreaux v. Swift Transp. Co.*, 402 F.3d

536, 540 (5th Cir. 2005) (emphasis added).  The Court will not weigh the evidence nor

evaluate its credibility; however, if the evidence demonstrating the need for trial "is

merely colorable or is not significantly probative, summary judgment may be granted."

*Anderson*, 477 U.S. at 249-50.  Thus, a non-movant must show more than a "mere

disagreement" between the parties, *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d

1408, 1413 (5th Cir. 1993), or that there is merely "some metaphysical doubt as to the

material facts."  *Matsushita*, 475 U.S. at 586.  Essentially, if a non-movant fails to present

specific facts that present a triable issue, its claims should not survive summary judgment.

*Giles v. Gen. Elec. Co.,* 245 F.3d 474, 494 (5th Cir. 2001).  Indeed, "summary judgment

is mandated if the nonmovant fails to make a showing sufficient to establish the existence

of an element essential to her case on which she bears the burden of proof at trial."

*Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *accord*, *Bluebonnet Hotel Ventures,*

*L.L.C. v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014).

    In this case, the Plaintiffs bear the ultimate burden as to the nondischargeability of

the debt.  Therefore, the Plaintiffs are entitled to a summary judgment only if there exists

no genuine issue of material fact as to each essential element under the

nondischargeability theory that is pled.  The Plaintiffs assert that the principles of issue

preclusion (collateral estoppel) resulting from the entry of the Federal Court Judgment

provide the factual foundation necessary to support a finding of nondischargeability.  In

order to properly assess this claim, the Court must first determine the applicability of the

doctrine itself.  If collateral estoppel applies, then any appropriate factual findings of the

presiding federal court should not be disturbed here, and the Court will apply those findings to the nondischargeability elements.  To the extent that an actual controversy does exist over a disputed fact, the finder of fact resolves any doubts and draws all reasonable inferences in favor of the nonmoving party. *U.S. ex rel. Longhi v. United States,* 575 F.3d 458, 465 (5th Cir. 2009).

*Standards for Issue Preclusion (Collateral Estoppel).*

"Collateral estoppel or, in modern usage, issue preclusion, 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigating between the same parties in any future lawsuit.'" *Schiro V. Farley*, 510 U.S. 222, 232 (1994), quoting *Ashe V. Swenson*, 397 U.S. 436, 443 (1970)); *see also* RESTATEMENT (SECOND) OF JUDGMENTS §27 (1982) ["When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."].  "[P]arties may invoke collateral estoppel in certain circumstances to bar relitigation of issues relevant to dischargeability [and] collateral estoppel can provide an alternate basis to satisfy the elements of § 523(a)(6)." *Raspanti v. Keaty (In re Keaty)*, 397 F.3d 264, 270 (5th Cir. 2005) (quotation marks and alterations omitted). The bankruptcy court retains exclusive jurisdiction, however, to determine whether a debt is dischargeable.  *Grogan v. Garner*, 498 U.S. 279, 284, n.11 (1991); *Simpson & Co. v. Shuler (In re Shuler)*, 722 F.2d 1253,

1255 (5th Cir. 1984).

Because the judgment against the Debtor arose from a federal court, federal principles of issue preclusion control. *RecoverEdge, L.P. v. Pentecost*, 44 F.3d 1284, 1290 (5th Cir. 1995). Accordingly, the application of issue preclusion in this case rests upon three factors[33]: (1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a part of the judgment in that earlier action. *Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 932 (5th Cir.), *cert denied,* 527 U.S. 1004 (1999) (citing *Pentecost*, 44 F.3d at 1290).

In consideration of the *Southmark* elements, both parties to this action were involved in the federal court litigation and aligned similarly. It is further clear that the determination of whether the Defendant should be held individually liable for the indebtedness at stake was necessary to the entry of the Federal Court Judgment against the Defendant. The Defendant contends that because the District Court's findings arose from a default that was imposed as a sanction for a willful disregard of court orders, it cannot be considered to have been "fully and fairly litigated."

---

[33] Though considered extraneous in most circumstances, a fourth requirement that there be "no special circumstance that would render preclusion inappropriate or unfair" is sometimes listed, *see, e.g.,* id*; U.S. v. Shanbaum*, 10 F.3d 305, 311 (5th Cir. 1994), particularly in cases involving offensive collateral estoppel. But since this case involves traditional (or mutual) issue preclusion and no party has alleged the existence of any such special circumstance, this fourth requirement is deemed inapplicable to the case at hand.

That is clearly incorrect.  "A sanctioned post-answer default judgment is considered a final judgment on the merits for collateral estoppel purposes even when the defendant's pleadings are struck." *Guion v. Sims (In re Sims)*, 479 B.R. 415, 421 (Bankr. S.D. Tex. 2012) (citing *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1201 (5th Cir. 1996)) [explaining that the judgment at issue was final because debtor was aware of the creditor's motion for sanctions and of the possibility that the court would strike his pleadings in rendering a default judgment] [with both cases applying Texas issue preclusion principles].  One year after *Gober*, in *Pancake v. Reliance Ins. Co. (In re Pancake),* 106 F.3d 1242 (5th Cir. 1997), the Fifth Circuit again approved the use of collateral estoppel in a bankruptcy dischargeability action arising from a case in which a Texas state court, after striking the answer of the defendant for discovery abuses, entered judgment for $455,703.31 at a trial at which the defendant failed to appear.  Under those circumstances, the Circuit stated that, notwithstanding the defendant's absence, "where the court enters a default judgment after conducting a hearing or trial at which the plaintiff meets [its] evidentiary burden, the issues raised therein are considered fully and fairly litigated for collateral estoppel purposes." *Id.* at 1244.

Though the decisions in *Pancake* and *Gober* involved the application of Texas law on issue preclusion as opposed to federal law, the point as to when an issue is "actually litigated" is the same.  *Cornwell v. Loesch (In re Cornwell)*, 109 Fed. App'x. 682 (5th Cir. 2004).  The Fifth Circuit in *Cornwell* stated that "[I]f there was evidence for the bankruptcy court to conclude that the Kansas [federal court] judgment was a post-answer

default entered as a sanction for discovery violations, it could conclude that the issue was

'actually litigated' and issue preclusion applied." *Id*. at 684.  This follows a generally

recognized principle recognized by several federal circuits that "if a party substantially

participates in litigation prior to the entry of a default judgment, a federal court can apply

collateral estoppel and prevent that party from relitigating the issues decided by the

judgment." *Int'l Strategies Group, Ltd. v. Pomeroy (In re Pomeroy)*, 353 B.R. 371, 377

(Bankr. D. Mass. 2006) (citing, in addition to *Cornwell*, *Herbstein v. Bretman*, 32 Fed.

App'x 158 (7th Cir. 2002);[34] *Wolstein v. Docteroff (In re Docteroff)*, 133 F.3d 210, 215

(3d Cir. 1997); *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319, 1324

(11th Cir. 1995) ["Where a party has substantially participated in an action in which he

had a full and fair opportunity to defend on the merits, but subsequently chooses not to do

so, and even attempts to frustrate the effort to bring the action to judgment, it is not an

abuse of discretion for a district court to apply the doctrine of collateral estoppel to

prevent further litigation of the issues resolved by the default judgment in the prior

action."]; *FDIC v. Daily (In re Daily)*, 47 F.3d 365, 367 (9th Cir. 1995) [default judgment

as sanction for failure to provide discovery].   Thus, the unilateral election of the

Defendant to forego any appearance at the October 21 pretrial conference despite being

---

[34] The Seventh Circuit in *Herbstein* "affirm[ed] for the reasons given by the district judge."  The district court had previously held that "where [a litigant] participated extensively then failed to comply with an express court order issued multiple times at a risk of incurring default, [then] we agree with the Bankruptcy Court and the Third [Circuit] ... that [the litigant] should not now be able to sidestep the collateral estoppel doctrine and litigate an issue in this forum that was forestalled in [another court] due solely to [the litigant's] decisions. [The litigant] is not entitled to a second bite at the apple. The issue underlying the ... default judgment were "actually litigated for purposes of the collateral estoppel doctrine." *Herbstein v. Bruetman*, 266 B.R. 676, 685 (N.D. Ill. 2001) (citing *Docteroff*, 133 F.3d at 215).

repeatedly ordered to do so, and his decision to forego any submission to the District Court in November 2015 on the issue of damages, precluded any complaint of the Defendant regarding the binding nature of the findings imposed as a result of a sanction that resulted in the entry of a default judgment.  *Bush*, 62 F.3d at 1325 ["Just as due process is not offended by the entry of a default judgment against a party for failure to cooperate with discovery, neither is due process offended if a debtor is held to the consequences of that judgment in a subsequent bankruptcy discharge proceeding."].

The record sufficiently demonstrates that the District Court considered evidence on the Plaintiffs' claims against the Defendant.  Because the parties present for the final pretrial conference "expressed their desire to prove up damages via written submission, rather than a hearing," the District Court ordered that the Plaintiffs file affidavits, exhibits, other materials, and legal memorandum, and granted the Defendant the opportunity to be heard in response.[35]  Following this order, the District Court admitted evidence and made factual findings.  The Defendant was provided a full and fair opportunity to litigate any contested issue if he had simply followed the District Court's directive to attend the final pretrial conference and had he elected to submit any contrary evidence regarding damages to the Court.  He chose not to do so.  The District Court subsequently determined that the Plaintiffs had met their burden of proof, resulting in the entry of the Federal Court Judgment against the Defendant.  Under the applicable authorities, that is sufficient to meet the "actually litigated" requirement for the

---

[35] Plaintiffs' Ex. 3 at 6.

application of issue preclusion.  Thus, the Defendant is precluded from relitigating the facts established in the Federal Litigation under the principles of issue preclusion and such resolved factual determinations are germane to the Plaintiffs' § 523(a)(2)(A) claim.

*Nondischargeability Under § 523(a)(2)(A): Debt Arising by False Pretenses, False Representation or Actual Fraud*

The summary judgment motion filed by the Plaintiffs seeks a judgment as a matter of law that determines that the debt owed to them by the Defendant should be excepted from discharge under § 523(a)(2)(A) as a debt obtained as a debt obtained by false pretenses, a false representation or actual fraud.  11 U.S.C. § 523(a)(2)(A) of the Bankruptcy Code provides that:

> a discharge under § 727 of this title does not discharge an individual debtor from any debt for money, property, or services, . . . to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

Section 523(a)(2)(A) encompasses similar but distinct causes of action.  Though Other circuits have applied a uniform standard to all § 523(a)(2)(A) [36] actions.  The Fifth

---

[36] *See, e.g., Britton v. Price (In re Britton)*, 950 F.2d 602, 604 (9th Cir. 1991); *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1287 (8th Cir. 1987).  Though some bankrupcy courts outside of the Fifth Circuit have cited the decision of the United States Supreme Court in *Field v. Mans*, 516 U.S. 59 (1995), in support of their proposition that all of the § 523(a)(2)(A) actions are governed by the elements for actual fraud, *see, e.g., AT&T Universal Card Services v. Ellingsworth (In re Ellingsworth)*, 212 B.R. 326 (Bankr. W.D. Mo. 1997); *AT& T Universal Card Services v. Alvi (In re Alvi)*, 191 B.R. 724 (Bankr. N.D. Ill. 1996); the Supreme Court in that case was actually distinguishing the language used in § 523(a)(2)(A) from that utilized in § 523(a)(2)(B) in order to determine the degree of reliance necessary above mere reliance in fact in order to exempt a debt from discharge under (a)(2)(A).  Since the Supreme Court specifically refused to even apply their direct holding regarding the degree of  reliance in actual fraud cases to cases of false pretense or false representation, 116 S.Ct. at 443, n. 8, the statement that the Court erased all distinctions between the three (a)(2)(A) actions strains credibility.

Circuit has distinguished the elements of "actual fraud" and of "false pretenses and false representations." *Pentecost*, 44 F.3d at 1291. The distinction recognized by the Fifth Circuit appears to be a chronological one, resting upon whether a debtor's representation is made with reference to a future event, as opposed to a representation regarding a past or existing fact. *Bank of La. v. Bercier (In re Bercier)*, 934 F.2d 689, 692 (5th Cir. 1991) [A debtor's promise ... related to a future action which does not purport to depict current or past fact ... therefore cannot be defined as a false representation or a false pretense].[37] Because any representation by the Defendant regarding the future disposition of net proceeds arising from the performance of the contract pertained to a future event, any such statement cannot be properly characterized as a false representation or a false pretense in this Circuit. Thus, the validity of the Plaintiffs' claim under § 523(a)(2)(A) in this case rests upon sufficient proof that the debts were obtained by actual fraud.

To have a debt accepted from discharge pursuant to the "actual fraud" provision in § 523(a)(2)(A), an objecting creditor must prove that:

(1) the debtor made representations;
(2) at the time they were made the debtor knew they were false;
(3) the debtor made the representations with the intention and purpose to

---

[37] While "false pretenses" and "false representation" both involve intentional conduct intended to create and foster a false impression, the distinction is that a false representation involves an express statement, while a claim of false pretenses may be premised on misleading conduct without an explicit statement. *See Walker v. Davis (In re Davis)*, 377 B.R. 827, 834 (Bankr. E.D. Tex. 2007); and *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 760 (Bankr. E.D. Tenn. 2003). In order for a debtor's representation to constitute a false pretense or a false representation, it "must have been: (1) [a] knowing and fraudulent falsehood, (2) describing past or current facts, (3) that [was] relied upon by the other party." *In re Allison*, 960 F.2d at 483; *see also In re Bercier*, 934 F.2d at 692 ["to be a false representation or false pretense under § 523(a)(2), the false representations and false pretenses must encompass statements that falsely purport to depict current or past facts"].

deceive the creditor;

(4) the creditor justifiably relied on such representation; and

(5) the creditor sustained losses as a proximate result of the representations.

*Pentecost*, 44 F.3d at 1293, *as modified by the United States Supreme Court decision of Field v. Mans*, 516 U.S. 59 (1995) [regarding the proper standard of reliance].

When those elements are applied to the specific findings rendered against the Defendant, each debt of $605,483.95 owed to each Plaintiff by the Defendant, as established in the Federal Litigation, must be declared nondischargeable under 11 U.S.C. § 523(a)(2)(A) as a matter of law.  The admitted facts establish that the Defendant made "false, misleading, deliberate and material representations" to Plaintiffs concerning the sharing of profits[38] as an intentional act in order to induce the Plaintiffs to supply the resources and to perform the services that were required under the cleanup contract[39] but that, from the inception of the agreement, the Defendant had no actual intention to divide the net profits with the Plaintiffs.[40]  Thus, the Defendant knew that his representations were false at the time they were made, but he made them for the particular purpose of inducing performance by the Plaintiffs to their detriment — thereby deceiving them.[41] The Defendant also admitted that the Plaintiffs reasonably relied upon the fraudulent representations issued by him and his company regarding the division of the net profits.[42]

---

[38] *See supra* note 20 and accompanying text.

[39] *See supra* note 18 and accompanying text.

[40] *See supra* note 19, 29 and accompanying text.

[41] *See supra* notes 19-22, 29 and accompanying text.

[42] *See supra* note 23 and accompanying text.

Finally, since the Defendant paid absolutely none of the net profits to the respective parties to whom they were owed,[43] which was precisely the Defendant's intention when he made the false representations in order to induce the contractual performance by the Plaintiffs, there is no allocation problem here.  The intentionally false representations of the Defendant regarding the division of the net profits proximately caused all of the damages suffered by each Plaintiff and, thus, the actual fraud committed by the Defendant renders nondischargeable under § 523(a)(2)(A) each of the respective debts which the Defendant owes to the Plaintiffs pursuant to the Federal Court Judgment.

## Conclusion

Accordingly, upon due consideration of the pleadings, the proper summary judgment evidence submitted by the parties, the material facts admitted to exist under Fed. R. Bankr. P. 56 and E.D. TEX. LOCAL R. CV–56(c), the relevant legal authorities and for the reasons set forth herein, the Court concludes that there is no genuine issue as to any material fact and that each of the three debts in the original amount of $605,483.95 owed by the Debtor-Defendant, Michael R. Huffman, to each of the Plaintiffs, Warren Claybar, Rian Glasscock, and Halley Moor, respectively, as recited in that certain Default Judgment entered on December 8, 2015 by the United States District Court for the Southern District of Alabama, in case no. 14-0205-WS-C, and styled *Warren Claybar, Rian Glasscock, and Halley Moor v. Michael R. Huffman and Huffman Construction,*

---

[43] *Id.*

*Inc.,* is hereby determined to be nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

Court costs incurred in this adversary proceeding in the amount of $350.00 are assessed

against the Defendant, Michael R. Huffman, in favor of the Plaintiffs, Warren Claybar,

Rian Glasscock, and Halley Moor, jointly.  An appropriate order and a judgment will be

entered which are consistent with this opinion.


Signed on 10/13/2017


THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE